UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

SOFJAN LAMID, ET AL.

CRIMINAL ACTION

NO. 10-104-JJB

**RULING ON DEFENDANT SOFJAN LAMID'S COMPETENCY TO STAND TRIAL**

The question presented is whether defendant Sofjan Lamid is incompetent to stand trial.

I.

The Court previously conducted an initial competency hearing (*see* Doc. 410), and the defense and government agreed that he should be committed to the custody of the Attorney General for evaluation under 18 U.S.C. § 4241(d). The Court ordered his commitment (Doc. 411), and Lamid underwent evaluation and treatment at the Federal Medical Center in Butner, North Carolina. (*See* Report of Dr. Ralph Newman, Exhibit to Doc. 559). The conclusion of Dr. Newman and his team was that Lamid is competent to stand trial. (*Id.* at 18). The acting warden of the Butner facility filed a certificate of restoration of competency under 18 U.S.C. § 4241(e). The Court then held another hearing on June 22, 2012, pursuant to § 4241(e) to make a final determination regarding Lamid's competency. (*See* Minute Entry, Doc. 559). The parties have filed post-hearing briefs. (Government's Memo., Doc. 542; Lamid's Memo., Doc. 543). Lamid has further moved to re-open the hearing to supplement the record with the report of Dr. Roberta Bell. (*See* Docs. 544-45).

II.

After an initial competency hearing is held under 18 U.S.C. § 4241(d) and the defendant has been committed to the custody of the attorney general under § 4241(e), the Court must hold

1

another hearing under § 4241(e) if the hospital certifies defendant's competency has been restored. If "the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him *and* to assist properly in his defense," then trial may commence. 18 U.S.C. § 4241(e). If the defendant proves his incompetence by a preponderance of the evidence, *Cooper v. Oklahoma*, 517 U.S. 348, 361 (1996),[1] the defendant must be discharged unless he is certified "his release would create a substantial risk of bodily injury to another person or serious damage to property of another," 18 U.S.C. § 4246(a), or "that the person is a sexually dangerous person," 18 U.S.C. § 4248(a). *See* 18 U.S.C. § 4241(d) (mandating that a committed defendant whose restored competency cannot be certified by the hospital remains subject to Sections 4246 and 4248).

Thus, following a second competency hearing, the Court must either grant the defendant his release if he is incompetent and unlikely to recover competency, or grant a dangerousness hearing under Section 4246 and/or Section 4248. *See, e.g., United States v. Duhon*, 104 F.Supp.2d 663 (W.D. La. 2000); *United States v. Wood*, 469 F.2d 676 (5th Cir. 1972) (per

---

[1] Fifth Circuit cases have assigned the government with the burden of proving a defendant's competency. *See, e.g., United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987); *United States v. Makris*, 535 F.2d 899 (5th Cir. 1976) (analyzing substantially similar language in 18 U.S.C. § 4244). This accords with the position taken by the Second, Third, and Ninth Circuits, *see Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d 348 (2d Cir. 1982); *United States v. DiGilio*, 538 F.2d 972 (3d Cir. 1976); *United States v. Frank*, 956 F.2d 872 (9th Cir. 1991), but conflicts with the position of the Tenth Circuit in *United States v. Smith*, 521 F.2d 374 (10th Cir. 1975). The Supreme Court, without discussion, may have agreed with the Tenth Circuit. *See Cooper*, 517 U.S. at 361 ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." (*citing* 18 U.S.C. § 4241)). *Cooper* prefaced that finding by noting the burden of proof would only affect the outcome "in a narrow class of cases where the evidence is in equipoise." 517 U.S. at 355 (citation omitted). However, at least one subsequent Fifth Circuit case after *Cooper* nevertheless placed the burden on the government to prove competency *once the defendant's competency has been validly called into question*. *United States v. Moghaddam*, 299 Fed.Appx. 418, 419 (5th Cir. 2008) (citing *Makris*) (emphasis added). The Court thus reads Section 4241 and *Cooper* as placing the initial burden on the defendant to proffer sufficiently convincing evidence to trigger an initial competency hearing, but that once a competency hearing is held, the government bears the burden of proving by a preponderance of the evidence that the defendant is competent to stand trial. While perhaps a somewhat strained reading, this harmonizes *Moghaddam*'s pronouncement with *Cooper* and the Fifth Circuit's long line of pre-*Cooper* jurisprudence. Regardless, the Court does not find the evidence in equipoise, so the burden does not determine the outcome here, as per *Cooper*.

curiam).[2] A dangerousness hearing can only be granted after the district court receives a certificate from the commitment facility putting the defendant's dangerousness at issue, but the Court may temporarily commit the defendant to give the director of the commitment facility an opportunity to certify such a finding. *United States v. Bonin*, 541 F.3d 399 (5th Cir. 2008) (per curiam); *see also United States v. Rivera-Morales*, 365 F.Supp.2d 1139 (S.D. Cal.), *aff'd*, 160 Fed.Appx. 648 (9th Cir. 2005) (temporary commitment of 30 days following incompetency finding appropriate).

### III.

Lamid and his experts do not call into question his ability to generally understand the nature and consequences of the proceedings against him sufficient to satisfy the first prong of the competency test. They contend only that a mental disease or defect renders him unable to properly assist in his defense. (Lamid's Memo., Doc. 543 at 2; Bloch Testimony, Transcript at 117). Thus, the inquiry reduces to whether defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding…." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (*quoting Dusky v. United States*, 362 U.S. 402 (1960)).

### A.

Lamid is an 82 year-old retired physician who stands approximately 5 feet, 2 inches in height. (Newman Report at 2; Bloch Report, Doc. 409, at 4). He is a native of Indonesia and received his medical degree there. (Newman Report at 2-3). Since coming to the United States in 1969, he has served in numerous capacities in the medical and health care fields. (*Id.* at 3-4). Lamid is at times difficult to understand due to his accent and low volume. Lamid currently

---

[2] The sexually dangerous person provision in Section 4248 was added in 2006. *See United States v. Comstock*, 130 S.Ct. 1949 (2010) (upholding statute against constitutional challenges). The Court's reference to a "dangerousness hearing" includes Sections 4246 and 4248.

suffers from, *inter alia*, diabetes, hypertension, and Bell's palsy, and he previously suffered a stroke. (*Id.* at 4). His father died at age 67 from diabetes, hypertension, and dementia. (*Id.* at 2).

Lamid relies solely on the testimony of Dr. Ted Bloch, a board-certified geriatric psychiatrist. (Transcript at 113). Dr. Bloch has evaluated and treated more than one thousand geriatric patients. (*Id.* at 114). Bloch explained the distinguishing characteristic of geriatric training focused on cognitive impairment in the elderly, differing in kind from evaluations of other adults with psychiatric conditions that general psychiatrists regularly deal with. (Transcript at 128-29).

Bloch initially only had two hours to spend with Lamid due to the expedited request from this Court for analysis on the eve of the originally scheduled trial date. (*See* Bloch Report, Doc. 409, at 1). At the time of his initial report, he was able to diagnose Lamid with dementia not otherwise specified. (*Id.* at 5). He admitted his evaluation was "clearly limited by a lack of other supporting data" such as prior medical records, lab studies, brain imaging, and other neuropsychological testing. (*Id.*).

At the hearing, Dr. Bloch was able to specify his diagnosis of Lamid as mixed dementia, a combination of Alzheimer's and vascular dementia. (Transcript at 116). He reached this conclusion after obtaining access to the records, tests, studies and images to which he previously lacked access. (*Id.* at 115-16).

Both parties agree MRI scans of Lamid's brain revealed extensive cerebral atrophy, an extensive erosion of "white matter" that Dr. Bloch found irreparable. (Newman Testimony, Transcript at 34-36; Bloch Testimony, Transcript at 124-25). This finding was consistent with the testimony of collateral sources, including Lamid's family, his treating physician, and his defense counsel, all of whom noticed defendant's signs of deteriorating memory.

4

The memory testing performed by Dr. Bloch reveals scores indicating significant cognitive impairment under the standards of geriatric psychiatry, a finding intensified by Lamid's previous occupation as a physician, a profession obviously demanding higher-than-ordinary intelligence and memory levels. The report from one of the government's experts, Dr. Bianchini, confirmed this analysis, in Dr. Bloch's view, based on subtests showing significant cognitive impairment. (*Id.* at 121).

B.

The government presented testimony from Dr. Ralph Newman, a staff psychiatrist at the Federal Medical Center in Butner, North Carolina, and author of a report finding Lamid competent. Dr. Newman's qualifications are stellar, but his field of specialty limits the weight his testimony might otherwise command. He has very limited exposure to geriatric patients and could recall only one other geriatric patient other than Lamid. (Transcript at 56-57).

The government also presented the testimony of Kevin Bianchini, PhD., a clinical psychologist and neuropsychologist who evaluated Lamid before the initial competency hearing. Dr. Bianchini concluded Lamid was malingering[3] and thus discredited the Lamid's scores on a variety of tests which, in part, found varying levels of impairment. Even if true, though, Drs. Newman and Bloch testified that Lamid exhibited no signs of malingering during their evaluations.

C.

Normally, courts place great weight on the evaluations of doctors from a Federal Medical Centers following initial commitment for competency testing, not only due to their expertise but

---

[3] Malingering is a medical term used to describe a person faking or exaggerating an illness or symptom, usually for ulterior motives.

also their ability to evaluate the patient over a much longer period of time. *See, e.g., United States v. Birdsell*, 775 F.2d 645, 651 (5th Cir. 1985); *United States v. Stanford*, No. H-09-342, 2012 WL 1699459, at *11 (S.D. Tex. May 10, 2012) (citations omitted). Existence of memory problems, and even amnesia, do not *per se* require a finding of incompetency. *See, e.g., United States v. Doke*, 171 F.3d 240, 248 (5th Cir. 1999); *United States v. Swanson*, 572 F.2d 523, 527 (5th Cir. 1978). Rather, the Court must consider "the circumstances of each individual case." *Doke*, 171 F.3d at 248 (citations omitted).

In the circumstances of this case, the Court must respectfully disagree with the Dr. Newman and his colleagues at the Federal Medical Center. Dr. Newman has no specialized training and, based on his testimony, admittedly little actual experience dealing with geriatric patients. The Court finds the testimony of Dr. Bloch most credible, in large part because he has the relevant expertise to evaluate and diagnose Lamid under the standards of that peculiar specialty. In placing great weight on Dr. Bloch's testimony and ultimately adopting his conclusion, the Court draws on experience both legal and personal. Geriatric patients simply differ in kind from the types of patients Drs. Newman and Bianchini normally evaluate and treat. *Cf. State of Wisc., Dept. of Health and Social Services v. Bowen*, 797 F.2d 391, 414 (7th Cir. 1986). Dr. Bloch demonstrated his relevant expertise at the hearing, and the Court agrees with his conclusion that Lamid does indeed suffer from dementia and cannot adequately assist in his defense.

V.

Accordingly, the Court finds by a preponderance of the evidence that defendant Sofjan Lamid is INCOMPETENT to stand trial.

The motion to reopen the hearing (Doc. 544) is DENIED as moot.

It is ORDERED that the government inform the Court within three (3) days of this Ruling whether it intends to pursue a dangerousness determination under 18 U.S.C. § 4246.

It is further ORDERED that the conditions of Lamid's release shall be maintained in the interim until further order of this Court.

Signed in Baton Rouge, Louisiana, on July 30, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**